Stephen R. Bosin, Esq.
70 Grand Ave. Suite 200
River Edge, N.J. 07661
(201) 342.4117
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____X

Clarissa Denny                                    **COMPLAINT**

                                                  CIVIL ACTION NUMBER

      Plaintiff

      v.

Sun Life Assurance Company
of Canada

      Defendant

_____X

    Comes now Clarissa Denny, hereinafter ("Plaintiff") for her Complaint against the Sun Life Assurance Company of Canada, hereinafter ("Defendant") and states as follows:

**Jurisdiction and Venue**

    1)    This suit is brought under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. §1001, et seq. to recover the payment of long term disability insurance benefits.

    2)    Jurisdiction is conferred on this Court by virtue of Title 29 U.S.C. §1131, 29 U.S.C. § 1132 (d)(e) & (f) and 28 U.S.C.§1331.

    3)    The ERISA statue provides for a mechanism for administrative or internal appeals of benefit denials.  Those avenues of appeal have been exhausted.

4) Venue is proper in the District of New Jersey by virtue of Title 29 U.S.C. §1132(e) (2) and 28 U.S.C. § 1391(b).

## Nature of Action

5) This is a claim seeking an award to Plaintiff of disability income benefits pursuant to an Employee Welfare Benefit Plan, Group Policy No. 2329381 ("The Plan") providing group long term disability benefits to employees of the Saint Barnabas Hospital.

6) This action seeking the recovery of benefits is brought pursuant to Section 502(a) (1) (B) of ERISA (29 U.S.C.1132 (a)(1)(B).

## The Parties

7) Plaintiff resides at 300 Malapardis Road, Morris Plains, Morris County, New Jersey.

8) Defendant, Sun Life Insurance Company of Canada, has its corporate office at One Sun Life Executive Park, Wellesley Hills, Massachusetts, and is authorized by the New Jersey Department of Banking and Insurance to engage in business in the State of New Jersey where it provides long term disability benefits to persons located in the State of New Jersey.

9) At all times relevant hereto, the Plan constituted an Employee Welfare Benefit Plan as defined by 29 U.S.C. § 1002(1) and as an incident to her employment Plaintiff received coverage under the Plan as a "Participant" as defined by 29 U.S.C. § 1002(7).

10) Defendant is responsible for payment under the subject plan, and for benefit decisions made by it, or on its behalf by the Plan Administrator.

## Claim For Benefits

11) On June 14, 2018 Plaintiff was no longer able to perform the material and substantial duties of her own occupation which was an Operating Room Technician and ceased working.

12) On October 29, 2018 she submitted a claim to Defendant for the payment of long-term disability benefits which Defendant denied by letter dated February 19, 2019.

13) By letter dated March 5, 2019 Plaintiff appealed the aforesaid decision, and by letter dated January 13, 2020 Defendant denied Plaintiff's appeal thereby exhausting her administrative remedies.

14) Plaintiff had become disabled due to Meniere's Disease, among other causes, which is a disorder of the inner ear which produces dizzy spells.  In support of her application for long term disability benefits, Plaintiff had submitted the opinion of Dr. Laura Downey, an Otolaryngologist, who had informed Defendant that this condition caused Plaintiff to be unable to stand or walk without dizziness.

15) Defendant's letter of January 13, 2020 states that Dr. David Foyt, an Otolaryngologist hired by Defendant, reviewed Plaintiff's claim and spoke with Dr. Downey on January 10, 2019.  He agreed that Plaintiff had met the diagnostic criteria for Meniere's Disease and said that the only appropriate restriction would be a height restriction.  Although clearly good advice for someone unpredictable dizzy spells, Dr. Foyt did not opine that she would be able to work as an Operating Room Technician if she was subject to unpredictable dizzy spells and to the risk of falling.

16) The Dictionary of Occupational Titles describes the duties of a surgical technician or operation technician ( job code 079.374.022 ) as one who, "Performs any combination of following tasks before, during, and after surgery to assist surgical team: Places equipment and supplies in operating room and arranges instruments, according to instructions. Assists team members to place and position patient on table. Scrubs arms and hands and dons gown and

gloves. Aids team to don gowns and gloves. Maintains supply of fluids, such as plasma, saline, blood, and glucose for use during operation. Hands instruments and supplies to surgeon, holds retractors, cuts sutures, and performs other tasks as directed by surgeon during operation. Puts dressings on patient following surgery. Counts sponges, needles, and instruments before and after operation. Washes and sterilizes equipment, using germicides and sterilizers. Cleans operating room."

17) Defendant's letter of January 13, 2020 further states that Plaintiff's condition was also reviewed Dr. Gupta, who unlike Dr. Downey and Dr. Foyt, is not an Otolaryngologist. He is only certified in internal medicine. Dr. Gupta agreed that she had bouts of dizziness and advised, among other things, that she would able to work if she followed certain safety restrictions included not driving a commercial vehicle, operating heavy/dangerous machinery, or walking around open bodies of water.

18) If Plaintiff is unable to do any of the above activities described by Dr. Gupta, she clearly she not able be able to work as an Operating Room Technician where the risk of dizziness would have far greater impact. Rather simply getting wet from falling into an open body of water, a sudden bout of dizziness would not only render her helpless, it would affect the performance of the surgical team, and risk patient safety.

19) There is no information in the claim showing that Plaintiff could not walk near an open body of water or drive a commercial vehicle but be able to work in an operating room as a surgical technician. There is also no information in the claim file showing that there are jobs for operating room technicians with unpredictable balance problems. It was therefore clearly arbitrary and capricious for Defendant to conclude that Plaintiff was unstable enough not to be

risk walking close to an open body of water yet able to be entrusted with the important responsibilities of an operating room technician.

20) Aside from Meniere's Disease Plaintiff is also disabled by arthritis and a joint disorder in her thumbs known as spondyloepiphyseal (an inherited bone growth disorder that results in short stature (dwarfism, skeletal abnormalities) a which affects the use of her hands. Plaintiff is 4 ft, 9 inches and weighs 140 pounds.

21) Defendant's letter of January 13, 2020 did not recognize this as having any functional effect based on the opinion of Dr. Gupta.

22) Dr. Gupta noted that the Disorders of the Major Joints Form, dated November 15, 2019 submitted by Dr. Kirschenbaum, a copy of which is annexed as **Exhibit A** had stated that claimant complains of major joint pain and stiffness but then discounted the opinion expressed on the Form because it was no supported by exam findings. This objection is blatantly unfair as that question was never asked by the Form which Defendant had created.

23) Dr. Gupta also discounted the information submitted on the Disorders of the Major Joints Form because it did not show that Plaintiff also had synovitis (an inflammation of the synovial tissue of a joint). The claim file does not indicate show that this finding is needed to show limited use of a thumb and apparently for that reason was not requested in the Disorders of the Major Joints Form.

24) Dr. Gupta also dismissed information submitted by Dr. Kirschenbaum on the Disorders of the Major Joints Form that Plaintiff was suffering from joint pain due to arthritis with the comment that it was a long standing condition. In writing this comment Dr. Gupta apparently forgot that in his 12/11/2019 conversation with Dr. Kirschenbaum he was advised that

5

her condition had worsened.  See Gupta letter to Kirshbaum dated 12/11/2019, annexed hereto as **Exhibit B.**

25) In support of her application Plaintiff had also submitted Dr. Kirschenbaum's response to Defendant's Physical Residual Functional Capacity Questionnaire dated 6/24/ 2019 which stated that the forms listed diagnosis of osteoarthropathy of the first carpometacarpal joint, lesion of the ulnar nerve right upper carpal tunnel syndrome, and left upper carpal syndrome, and spondyloepiphyseal dysplasia which according to Dr. Kirschenbaum indicated that her ability to perform fine and gross movements was impaired. A copy of this form is annexed as **Exhibit C.**

26) Dr. Gutpa also stated that the opinions expressed in the Physical Residual Functional Capacity Questionnaire were not consistent with his note of 5/9/2019 which found that her grip strength was well preserved. His note of 5/9/2019, a copy of which is annexed as **Exhibit D** never addressed the subject. It does note that her problems included arthritis of the wrist and osteoarthritis of the carpometacarpal joint of the thumb.

27) In answer to question No. 4 Dr. Kirschenbaum wrote that Plaintiff had "Pain at each thumb" and loss of coordination both hands and elbows." He also wrote that, " the pain is at the basal joint of each thumb."

28) Dr. Gupta discounted the information because there was a lack of a physical examination findings which ignores the fact that that the question was not asked in the Form.

29) Dr. Kirschenbaum's opinion does have factual support. In his assessment of 5/3/2018 a copy of which is annexed as **Exhibit E** states that radiographs show demonstrative change at the CMC joint of the thumb. He further writes that she has bilateral thumb CMC osteoarthritis which may require eventual basal joint arthroplasty.

30) In addition, Dr. Kirschenbaum's assessment of 5/10/2019 states that given her spondyloepiphyseal dysplasia and osteoarthritis of the carpometacarpal joint of the thumb, that sedentary work will create exacerbations of her upper extremity problems, pain at both wrists and at the base of each thumb as **Exhibit F.**

31) This finding alone is sufficient to determine Plaintiff to be disabled as its Occupational Analysis noted that the duties of a Surgical Technician require frequent fingering. See**, Exhibit G.**

32) Moreover, on December 5, 2019 Dr. Kirschenbaum informed Dr. Gupta that Plaintiff was not an operative candidate, did not have treatment options, and that her diminished range of motion impacted her ability to work.

33) After reviewing all the medical reports that Plaintiff had submitted, Dr. Gupta opined that she could return to work if she limited her lifting, carrying, pushing, and pulling to no more than 20 pounds. None of these restrictions relate to the nature of her disabilities, or her job duties and are virtually meaningless.

34) Defendant also failed to take into consideration of combined effects on Plaintiff as a whole person of the effects of Meniere's Disease, and spondyloepiphyseal dysplasia, and osteoarthritis of the carpometacarpal joint of the thumb, and that sedentary work will create exacerbations of her upper extremity problems, pain at both wrists and at the base of each thumb, and that she has diminished range of motion.

35) The information in Defendant's claim file establishes that Plaintiff is unable to perform the material and substantial duties of her regular occupation as an operating room

technician, and is therefore disabled within the meaning of the subject plan, and entitled to the payment of long term disability benefits.

36) Defendant's decision to deny payment was arbitrary and capricious, and not supported by substantial evidence.

37) A "higher than marketplace "quality standard as set forth in Metropolitan *Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008) applies to evaluating the actions of Defendant in this matter.

38) Defendant was required to discharge its duties "solely in the interests of the participants and beneficiaries of the Plan."

39) Defendant violated the "higher than marketplace" standard that ERISA imposes on insurers.

40) Defendant represented to Plaintiff that benefits would be paid if she met the terms and conditions of the Plan, but failed to fulfill its obligation to discharge its duties solely in the interest of the Plan participants.

41) Defendant  breached its fiduciary duty by failing to fairly review and reasonably interpret the reports prepared by Plaintiff's treating and examining physician, and by failing to consider material information relevant to Plaintiff's medical condition.

42) Defendant also failed to provide Plaintiff with an explanation of the specific information required by 29 C.F.R §. 2560.503-1(g) (1) (iii) to enable her to perfect her appeal.

43) Defendant's decision to deny Plaintiff's claim is also a breach of its duty to provide a full and fair review of Plaintiff's claim as required by 29 C.F.R. 2560.503-1(h)(2).

44) Defendant owes long term disability benefits to Plaintiff from June 14, 2018.

and for as long thereafter as she remains disabled and eligible under said plan to age 65.

**WHEREFORE** Plaintiff, Clarissa Denney, demands judgment against Defendant, Sun Life Assurance Company of Canada as follows:

a. Ordering said Defendant to pay Plaintiff long term disability benefits from June 14, 2018,

b. Entering a Declaratory Judgment that Plaintiff is disabled within the meaning of Defendant's long term disability policy,

c. Awarding Plaintiff prejudgment interest from June 2018, until the date of Judgment,

d. Awarding Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g) court costs, and all other reasonable costs; and

e. Granting Plaintiff such other and further relief as this Court may deem just and proper.

/s/ Stephen R. Bosin 0656
Stephen R. Bosin, Esq.
70 Grand Ave. Suite 200
River Edge, N.J. 07661
(201)342.4117

Dated: March 4, 2020